IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 98-cv-01600-WYD

UNITED STATES OF AMERICA AND
STATE OF COLORADO,

      Plaintiffs,

v.

COLORADO ORGANIC CHEMICAL COMPANY, INC.,
RONALD L. SEIGNEUR AS TRUSTEE
FOR THE PHILLIP C. MOZER TRUST
COLORADO & EASTERN RAILROAD COMPANY,
GASAMAT OIL CORPORATION OF COLORADO
BURLINGTON NORTHERN SANTA FE RAILWAY,
BFI WASTE SYSTEMS OF NORTH AMERICA INC.,
ROBERT S. CALVERT,
SHELL OIL COMPANY, and
L-C CORPORATION,

      Defendants,

v.

NDSC INDUSTRIAL PARK, LLC

      Intervenor.

_____

**ORDER**
_____

I.    <u>INTRODUCTION AND BACKGROUND</u>

THIS MATTER is before the Court on NDSC Industrial Park, LLC's ("NDSC")

Partially Unopposed Motion to Intervene (ECF No. 38), filed February 4, 2015.   In this

motion, NDSC states that it seeks to intervene due to an unauthorized conveyance of its

rightfully owned property in violation of the Partial Consent Decree ("Consent Decree")

(ECF No. 38-2) that was entered in this case on September 9, 1999.   Colorado & Eastern

Railroad Company ("CERC") filed a response (ECF No. 42) on March 2, 2015 and a supplemental response (ECF No. 43) on March 3, 2015.   CERC opposes NDSC's motion to intervene.   On March 19, 2015, NDSC filed a reply (ECF No. 49).   On April 10, 2015, Plaintiffs United States of America and State of Colorado filed a joint submission (ECF No. 52) with regard to NDSC's motion and CERC's response.   In their joint submission, the Plaintiffs assert that while they do not oppose NDSC's motion to intervene, they do not intend to initiate any action against CERC for its apparent violation of the Consent Decree.

By way of background, in January 2014, NDSC filed a lawsuit in state court to quiet title to 11 acres of land located near the intersection of 52nd Street and Dahlia Street ("Dahlia Street Property") in Adams County, Colorado.   The Dahlia Street Property was once heavily polluted and declared a superfund site in 1982.   During this time, CERC owned seven acres of the Dahlia Street Property, which included the Spur and Mainline property areas.[1]   On September 9, 1999, a Consent Decree was entered by this Court that set forth the terms and conditions upon which the Environmental Protection Agency ("EPA") would conduct environmental remediation on the property.   In return, CERC authorized the EPA to sell its property through auction and the proceeds from the sale would be used to cover the remediation costs.   The Consent Decree also set forth the way in which the parcels of land could be sold and required the United States to approve any conveyance.

On November 2, 2001, CERC executed a quitclaim deed to Mr. Thomas Z. Mars

---

[1] The Spur property area includes the portion of the Dahlia Street Property that underlies the railroad spurs that run across the property.   The Mainline property area includes the strips of land underlying the mainline that runs across the Dahlia Street Property.

("Mars") conveying CERC's interest in the Spur and Mainline property areas.   In 2002, the EPA advertised the Dahlia Street Property, including CERC's seven acres, for sale at auction with no exclusions.   NDSC submitted the winning bid and paid $290,000 for the 11 acre property.   NDSC received two quitclaim deeds, one from CERC for seven acres and one from Colorado Organic Chemical Co. for four acres.   NDSC recorded the deeds on October 31, 2003.   In 2005, Mars then conveyed his interest in the Mainline property to Union Pacific.   As part of the 2014 state court action, NDSC asserted that CERC's conveyance of the Spur and Mainline property areas to Mars and Mars' subsequent conveyance of the Mainline property area to Union Pacific were in violation of the Consent Decree and therefore void.   On September 5, 2014, the state court issued a dismissal order concluding that only this Court has jurisdiction to interpret and enforce the terms of the Consent Decree.   On September 11, 2014, the state court stayed its dismissal of NDSC's first, second, and third claims pending the resolution of federal proceedings.

In the instant motion, NDSC moves to intervene in this case as a matter of right and also asserts that permissive intervention is appropriate.   For the reasons stated below, NDSC's Motion to Intervene (ECF No. 38) is granted.

II.   <u>ANALYSIS</u>

A.   Intervention of Right

Fed.R.Civ.P. 24(a)(2) governs intervention of right and provides that the Court must permit anyone to intervene who, on timely motion, "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of

the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."   Rule 24(a)(2) is not a mechanical rule; it necessitates the "exercise [of] judgment based on the specific circumstances of the case."   *San Juan Cnty., Utah v. United States*, 503 F.3d 1163, 1199 (10th Cir.2007).

        1.    Timeliness

"The timeliness of a motion to intervene is assessed in light of all circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances."   *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1250 (10th Cir.2001) (internal quotation marks omitted).   "The analysis is contextual; absolute measures of timeliness should be ignored."   *Id.*   "The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner.   Federal courts should allow intervention where no one would be hurt and greater justice could be attained."   *Id.* (internal quotation marks omitted).

NDSC first learned of its interest in this case via notification from William M. Schell ("Schell"), counsel for Mars.   On August 15, 2003, Schell sent a letter to Ms. Maureen O'Reilly of the EPA that responded to a Notice of Proposed Prospective Purchase Agreement, in which NDSC desired to purchase the Dahlia Street Property.   In this letter, Schell explained that part of the property described in the Prospective Purchase Agreement was owned by Mars and that NDSC's attorney was contacted regarding this

matter.   CERC contends that NDSC's motion is not timely because of NDSC's silence

since 2003.   CERC further contends that it has relied on this case being at an end and

that allowing NDSC to intervene would reopen a case that has been closed for 15 years.

I disagree that NDSC's motion is not timely under this factor.   Indeed, "absolute

measures of timeliness should be ignored."   *Utah Ass'n of Counties*, 255 F.3d at 1250.

This Court has retained jurisdiction over this matter since this case was terminated in

2000 for the purpose of interpreting and enforcing the terms of the Consent Decree.

Moreover, allowing intervention will not prejudice any party or disrupt any proceedings, as

none are pending, and greater justice can be attained therefrom.

2.      Interest Relating to Subject of Action

In the Tenth Circuit, "the interest must be direct, substantial, and legally

protectable."   *Utah Ass'n of Counties*, 255 F.3d at 1251 (internal quotation marks

omitted).   This "inquiry is highly fact-specific, and . . . the interest test is primarily a

practical guide to disposing of lawsuits by involving as many apparently concerned

persons as is compatible with efficiency and due process."   *Id.* at 1251-52 (internal

quotation marks omitted).   "[P]ractical judgment must be applied in determining whether

the strength of the interest and the potential risk of injury to that interest justify

intervention."   *San Juan Cnty. Utah*, 503 F.3d at 1199.   "The interest of the intervenor is

not measured by the particular issue before the court but is instead measured by whether

the interest the intervenor claims is *related to the property that is the subject of the action.*"

*Utah Ass'n of Counties*, 255 F.3d at 1252.   "At minimum, [t]he applicant must have an

interest that could be adversely affected by the litigation."   *United States v. Albert Inv.*

*Co.*, 585 F.3d 1386, 1392 (10th Cir.2009) (internal quotation marks omitted).

Here, NDSC claims an interest relating to the property that is subject to the Consent Decree.   Specifically, NDSC asserts that it is the rightful owner of the Dahlia Street Property and that its interest relating to the property is direct, substantial, and legally protectable.   The Plaintiffs note that CERC appears to have violated the Consent Decree.   The Consent Decree precluded CERC from conveying or selling property without prior written approval from the United States, unless the United States agreed to otherwise in writing.   However, the Plaintiffs state that they have no record that CERC received prior written approval or an agreement otherwise from the United States for CERC's conveyance of land to Mars in 2001.   Nonetheless, the Plaintiffs assert that they do not intend to initiate any action against CERC for its apparent violation of the Consent Decree.   Additionally, the Plaintiffs and CERC note that the Consent Decree precludes third party enforcement.   In this regard, the Consent Decree states: "[n]othing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree."   ECF No. 52-1, at ¶ 20.

Based on the foregoing, I find that NDSC's interest is related to the subject of this action.   NDSC's interest stems from its ownership of the Dahlia Street Property, which was enabled by the Consent Decree.   While the evidence before me may not conclusively entitle NDSC to enforce the Consent Decree, it is sufficient to permit intervention so that NDSC's property interest can be fully vetted.

3.      Impairment of Interest

"Rule 24(a)(2) also requires the intervenors to demonstrate that the disposition of this action may as a practical matter impair or impede their ability to protect their interest." *Id.* at 1253.   "To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied.   This burden is minimal."   *Id.*

NDSC argues that its right, title, and access to its property will remain unresolved unless it is allowed to intervene.   Without intervention, NDSC asserts that it may be left without a forum to protect its interests in light of the state court's ruling that this Court maintains jurisdiction over the Consent Decree.   CERC contends that this factor is not satisfied because NDSC has not identified a protectable interest.   Moreover, CERC states that if NDSC's motion to intervene is denied, NDSC's wishes and desires would be impaired by its own actions or inactions, not the actions of CERC or any other party to this proceeding.

However, based on the foregoing and having previously determined that NDSC has interests related to the subject of this action, I find that impairment of NDSC's substantial legal interest is possible if intervention is denied.

4.      Inadequate Representation

Finally, an applicant's burden is minimal to demonstrate that its interests are not adequately represented by existing parties.   *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1117 (10th Cir.2002).   In this case, NDSC's interests do not align with those of the existing parties.   CERC simply contends that there is nothing for

- 7 -

existing parties to protect since NDSC does not have any protected interests.   However, having previously determined that NDSC has interests related to the subject of this action, I note that CERC's interests conflict with those of NDSC.   Moreover, the Plaintiffs' assert that they do not intend to initiate any action against CERC for its apparent violation of the Consent Decree.   For these reasons, I find that NDSC's interests are not adequately represented by the existing parties.

III.   <u>CONCLUSION</u>

Based on the foregoing, I find that each factor under Fed.R.Civ.P. 24(a)(2) has been satisfied and that NDSC is entitled to intervene in this case as a matter of right.   As a result, the issue of whether NDSC is entitled to permissive intervention need not be addressed.   Additionally, I note that NDSC requests that the Court interpret the Consent Decree and grant NDSC's Motion to Enforce Consent Decree Order, attached as Exhibit A (ECF No. 38-1), ordering that CERC, Mars, and Union Pacific violated and interfered with the Consent Decree.   However, in order to obtain the Court's consideration, NDSC shall refile its Motion to Enforce Consent Decree Order as a separate motion allowing for a proper response and reply.   Accordingly, it is

ORDERED that NDSC Industrial Park, LLC's Partially Unopposed Motion to Intervene (ECF No. 38) is **GRANTED** to the extent that NDSC is entitled to intervene in this case as a matter of right.   It is

FURTHER ORDERED that NDSC shall refile its Motion to Enforce Consent Decree Order (ECF No. 38-1) as a separate motion **not later than Monday, September 14, 2015**.

Dated:   August 19, 2015.

BY THE COURT:


s/ Wiley Y. Daniel_____
WILEY Y. DANIEL,
SENIOR UNITED STATES DISTRICT JUDGE