IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.     98-cv-1600-WYD

UNITED STATES OF AMERICA AND
STATE OF COLORADO

    Plaintiffs,

v.

COLORADO & EASTERN RAILROAD COMPANY;

    Defendant,

v.

NDSC INDUSTRIAL PARK, LLC,

    Intervenor,

v.

THOMAS Z. MARS;
DENVER ROCK ISLAND RAILROAD; and
UNION PACIFIC RAILROAD COMPANY,

    Intervenors.

_____

**ORDER**
_____

I.   <u>INTRODUCTION AND BACKGROUND</u>

This matter is before the Court on NDSC Industrial Park, LLC's Consent Decree Order Motion (ECF No. 56), filed on September 10, 2015.  The motion is fully briefed. The matter originates out of a Consent Decree Order that was issued by this Court on September 9, 1999, between the Plaintiffs and Defendant Colorado & Eastern Railroad Company ("CERC") which, pursuant to section 9607 of the Comprehensive

Environmental Response Compensation and Liability Act ("CERCLA"), set forth terms and conditions for the payment of environmental remediation costs to clean up CERC's property in Adams County, Colorado.  The Consent Decree authorized the sale of CERC's property through auction, and defined the process of assigning the proceeds from those sales to cover remediation costs owed to Plaintiffs.  As part of that process, the Consent Decree established a requirement that any conveyances by CERC of its property must be approved by Plaintiff United States.

The Consent Decree identified CERC's property as including the OU1/5 Property and the OU3/6 Property.  Two acres within CERC's property were conveyed to Mars in 2001 through a quitclaim deed from CERC.  Plaintiff United States acknowledges that this conveyance was made without its authorization, but has stated that it has no intention of bringing any action against CERC, and that neither its interests nor the consideration that it received under the Consent Decree have been impacted by this conveyance.  *See* Joint Submission by Pl.s, ECF No. 52, p. 4.

NDSC Industrial Park LLC ("NDSC") placed a winning bid on seven acres of the OU1/5 Property, and subsequently proceeded with the purchase despite knowing that two of the seven acres had already been conveyed to Mars.  *Id.* at 3.  NDSC then filed a state court claim to quiet title on the two-acre portion previously conveyed to Mars.  In state court, NDSC alleged a violation of this Court's Consent Decree as a basis for its claim, arguing that CERC failed to secure the required authorization from Plaintiff United States prior to the conveyance.  The state court declined to rule on NDSC's claim,

holding that this Court has sole jurisdiction in interpreting and enforcing the Consent Decree that it issued.

Accordingly, NDSC filed a motion to intervene in this matter, based on the alleged unauthorized conveyance of its property pursuant to the terms of the Consent Decree, and asked the Court to invalidate and void the 2001 deed between CERC and Mars. On August 19, 2015, this Court granted NDSC's motion to intervene in this matter, but instructed NDSC to file a separate motion regarding the terms of the Consent Decree "in order to obtain the Court's consideration." Order, ECF No. 53, p. 8. The Court specifically allowed intervention based only on NDSC's alleged interest in the property which is defined in the Consent Decree in this matter. Although the Court found NDSC's alleged property interest sufficient to permit intervention, it also noted that "the evidence before me may not conclusively entitle NDSC to enforce the Consent Decree." *Id.* at 6. Thus, NDSC was ordered to submit the present motion to consider that question. In NDSC's motion, it clarifies its position, noting that it "has narrowed the preliminary relief it seeks." Mot., ECF No. 56, p. 3, n.2. NDSC now seeks "a determination that [CERC] violated the Consent Decree Order" and states its intention to subsequently seek further relief in the form of "an order to show cause regarding the violations and interference with the Court's order." *Id.* Specifically, NDSC asks the Court to "interpret the terms of its Consent Decree Order and hold that [CERC] violated the order when it made an unauthorized conveyance to Mr. Mars, [hold that] [CERC] lacked legal authority to make the conveyance, and [hold that] the conveyance of the subject property made without the

- 3 -

approval of the United States violates the Consent Decree Order and is therefore invalid and void." *Id.* at 9.

## II. ANALYSIS

NDSC states that it only seeks the Court's interpretation of the Consent Decree in its motion. However, based on the relief sought in the motion asking the Court to void the conveyance to Mars, NDSC actually asks the Court to enforce the Decree against CERC. The parties do not dispute that the Court retains jurisdiction to enforce its judgments, including consent decrees. The threshold issue is whether NDSC has standing to request the enforcement of the Consent Decree.

"Any party, whether original or intervening, that seeks relief from a federal court must have standing to pursue its claims." *City of Colo. Springs v. Climax Molybdenum Co.*, 587 F.3d 1071, 1078 (10th Cir. 2009), citing *Dillard v. Chilton Ctny. Comm'n*, 495 F.3d 1324, 1330 (11th Cir. 2007) (per curiam). "[B]ecause standing implicates a court's jurisdiction, it requires a court itself to raise and address standing before reaching the merits of the case before it." *Friends of the Earth, Inc. v. Laidlaw Environmental Servs.*, 528 U.S. 167, 180 (2000). "The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of the jurisdictional doctrines.'" *City of Colo. Springs*, 587 F.3d at 1078-79, citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).

NDSC is not a party to the Consent Decree because the Consent Decree defines the "parties" as the United States on behalf of the EPA, the State of Colorado, and CERC.

In order to enforce a consent decree by an entity that was not a party to the consent decree, there must be a case or controversy pending between the original parties. *See City of Colo. Springs*, 587 F.3d at 1078 (holding that "within litigation over which a district court has retained jurisdiction after entering a final decree, a proposed intervenor may not establish piggyback standing where the existing parties in the suit are not seeking judicial resolution of an active dispute among them."). NDSC argues that it "is not required to demonstrate a controversy between the original parties because it has its own Article III standing." Reply, ECF No. 69, p. 1. However, I do not find that NDSC has its own Article III standing in this matter – it has simply filed a motion in a terminated action. There is no pending case or controversy before the Court between the parties to the Consent Decree.

Notably, "on many occasions the Supreme Court has noted that an intervenor may not have standing, but has not specifically resolved that issue, so long as another party to the litigation had sufficient standing to assert the claim at issue." *San Juan Cnty. v. United States*, 503 F.3d 1163, 1171-72 (10th Cir. 2007), citing *McConnell v. Fed. Election Comm'n,* 540 U.S. 93 (2003); *Arizonans for Official English v. Arizona,* 520 U.S. 43 (1997); *Diamond,* 476 U.S. at 64. In these cases, intervenors have been permitted to "piggyback" on another party's standing when there was a current case or controversy at issue. *See, e.g.*, *Diamond*, 476 U.S. at 58, 61 (the intervenor, who was the only party to the litigation pursuing an appeal, did not have standing to pursue the appeal on his own, but he would have standing if the original defendant had also sought review, and that

without the presence of the original defendant in the appeal action, "there is no case for Diamond to join."); *McConnell*, 540 U.S. at 233 (holding that because an original defendant had standing, it was unnecessary to address the standing of the intervenor whose position was identical to the original defendant's); *Arizonans*, 520 U.S. at 66 (noting that the pertinent question in determining an intervenor's standing lies in whether the originating plaintiff still had a case to pursue); *see also Dillard v. Baldwin Cnty. Comm'rs*, 225 F.3d 1271 (11th Cir. 2000) (holding that a party seeking to intervene into an already existing justiciable controversy need not demonstrate standing as long as the original parties have established standing before the court); *Ruiz v. Estelle*, 161 F.3d 814 (5th Cir. 1998) (holding that under Article III, intervenors need not possess standing if the intervention is into a "subsisting and continuing Article III case or controversy and the ultimate relief sought by the intervenors is also being sought by at least one subsisting party with standing to do so."); *United States Postal Serv. v. Brennan*, 579 F.2d 188 (2d Cir. 1978) (noting that because there was already a case or controversy between the existing parties to litigation, the standing requirement was not imposed on the intervenor). Therefore, even under the analysis of NDSC's piggybacking on the standing of existing parties, NDSC cannot prevail because there is no current case or controversy pending before the Court on the part of the original parties.

Alternatively, NDSC argues that it has standing to enforce the Consent Decree because it is an intended beneficiary of the Decree. The Tenth Circuit has held that a party who is an intended beneficiary of a consent decree may pursue relief in an action to

- 6 -

enforce the decree.   *See Johnson v. City of Tulsa*, 489 F.3d 1089, 1110 (10th Cir. 2007); *see also Floyd v. Ortiz*, 300 F.3d 1223, 1226 (10th Cir. 2002).   The Court must consider the language of the Consent Decree to determine if the parties intended for NDSC to be a beneficiary.

NDSC argues that it is an intended beneficiary because the Decree "was intended to benefit and protect subsequent purchasers of land, such as NDSC."   Motion, ECF No. 56, p. 4.   NDSC refers to the portion of the Decree that mandates that CERC obtain approval from the United States prior to any conveyance of CERC's land.   NDSC argues that this requirement was put in place "to benefit and protect purchasers from the type of unauthorized conveyance and interference that took place here."   *Id.* at 5.   I do not agree.   Requiring CERC to obtain approval from the United States was put in place to protect the United States' interests, not those of unnamed potential future buyers.   At the time the Decree was issued, the United States' had an interest in CERC's properties which were named in the Decree, and the Decree was written to ensure a full reimbursement of the response costs incurred by Plaintiffs in connection with the release of toxic substances on the properties.   The intent of the provision requiring authorization of any conveyance by CERC was to ensure that all proceeds from the sale of these properties appropriately went to Plaintiffs.   No intent can be inferred from the language in the Decree that this provision was contemplated by the parties, agreed upon, and signed by the parties in order to protect future buyers.

Further, the Consent Decree contains a paragraph that discusses the rights of

nonparties which disclaims any intent to grant rights to third parties: "[n]othing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree."  Consent Decree, ECF No. 56-2, ¶ 20. Based on a plain reading of this paragraph, the parties intended to preclude any cause of action brought by nonparties.  NDSC points to the section heading for this provision, which is entitled "Effect of Settlement/Contribution Protection" and argues that the provision was intended to refer only to contribution rights, not to third party rights in general.  However, I read this section to generally preclude any cause of action by a nonparty in paragraph 20, and specifically to preclude contribution actions against CERC in the subsequent paragraphs.   Paragraph 20 clearly expresses the parties' intent that third parties cannot enforce the Consent Decree.  No inference can be drawn in NDSC's favor as a nonparty seeking enforcement of the Consent Decree, and accordingly, NDSC lacks standing to enforce it.

Other courts have arrived at the same conclusion in relation to similar provisions of consent decrees.  *See, e.g.*, *U.S. v. FMC Corp.*, 531 F.3d 813 (9th Cir. 2008); *Consol. Edison, Inc. v. Ne. Utils.*, 426 F.3d 524 (2d Cir. 2005); *McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund, Inc.*, 339 F.3d 1087 (9th Cir. 2003); *Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952 (8th Cir. 2002) ("In order for a third party to be able to enforce a consent decree, the third party must, at a minimum, show that the parties to the consent decree not only intended to confer a benefit upon that third party, but also intended to give that third party a legally binding and enforceable right to that benefit.").

Finally, NDSC cites to 42 U.S.C. §9659(a)(1) for the proposition that it has standing under CERCLA's citizen suit provision to enforce the Consent Decree in this matter. However, section 9659(a)(1) states in pertinent part, "any person may *commence a civil action* on his own behalf . . . against any person . . . who is alleged to be in violation of any . . . requirement, or order which has become effective pursuant to [Chapter 103 of CERCLA]." NDSC has not commenced any civil action here. Instead, it has only filed a motion asking the Court to enforce a Consent Decree to which it is not a party. Therefore, section 9659 is inapplicable here.

III. CONCLUSION

On September 10, 2015, NDSC filed a motion entitled "NDSC Industrial Park LLC's Consent Decree Order Motion." Based on the foregoing, the relief sought in the Motion cannot be granted because NDSC lacks standing to assert the requested relief. Accordingly, it is

ORDERED that NDSC Industrial Park, LLC's Consent Decree Order Motion (ECF No. 56) is **DENIED**.

Dated:   March 29, 2016

BY THE COURT:

s/ Wiley Y. Daniel
WILEY Y. DANIEL,
SENIOR UNITED STATES DISTRICT JUDGE